JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

TRACIE L. BROWN (CSBN 188349)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6917
    Facsimile: (415) 436-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>DWIGHT GILCHRIST, )<br>)<br>    Defendant. )<br>_____ ) | No. CR 06-538 SI<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Sentencing Date: April 24, 2009 |

CR 06-00538 SI
U.S.' SENTENCING MEMO

**INTRODUCTION**

Defendant Dwight Gilchrist has pled guilty ten counts of embezzlement, in violation of 18 U.S.C. § 656, and eight counts of bank fraud, in violation of 18 U.S.C. § 1344. The Defendant pled "open" to all charges in the Indictment on March 25, 2008.

The Probation Officer has calculated the Guideline range as 27-33 months (adjusted offense level 18; criminal history category I), and the government agrees with this calculation.

In light of the nature of the Defendant's conduct, the need to promote respect for the law, and the need to address the seriousness of the crimes, the government recommends a sentence of 27 months, at the low end of the Guidelines range.

**FACTUAL BACKGROUND**

The Defendant engaged in two schemes to steal from Wells Fargo Bank ("WFB") – one while he was a WFB employee in 1998, and the second over the course of more than a year from 2000 to 2001. Counts One through Ten, which relate to the first scheme, charge him with embezzlement (18 U.S.C. § 656). Counts Eleven through Eighteen, which arise out of his second scheme, charge him with bank fraud (18 U.S.C. § 1344). In both schemes, the Defendant made use of false names and stolen Social Security Numbers.

A.   <u>Embezzlement Scheme – (Counts One through Ten)</u>.

In October 1997, a man claiming to be named "Michael Colston" applied for and obtained a job with WFB in the Overdraft Collections Unit. Over the course of a few days in March 1998, "Colston" accessed WFB's computer system and added the name "Dwight Gilchrist" as an authorized account holder on more than a dozen different accounts. The Defendant, Dwight Gilchrist, then withdrew cash – ranging in amounts from $750 to $2,000 – from those accounts on which he had been added.

When WFB discovered what had happened, a WFB Fraud Investigator went to speak to employee "Michael Colston" about the addition of the name Dwight Gilchrist to the accounts. As soon as the Fraud Investigator mentioned the name Dwight Gilchrist, "Colston" suddenly got up from his desk and left the building, never to return.

The Defendant is, in fact, "Michael Colston." The Defendant had numerous fraudulent

California Driver's licenses in various names, including the names Michael Colston, Bruce Gilchrist, David Bangsberg, and Dominick Dean DePhilippis.

### B. Bank Fraud Scheme (Counts Eleven through Eighteen)

Beginning in late 1999, the Defendant opened numerous WFB accounts in the names of Dwight Gilchrist, Bruce Gilchrist, and David Bangsberg (and various dba's using those names). Armed with both his fraudulent California driver's licenses and the knowledge he obtained while working as "Michael Colston" in the Overdraft Collections Unit, the Defendant devised a check-kiting scheme whereby he created and forged dozens of checks made out to his various identities and fake businesses, deposited them into his accounts, and then either wrote checks to "cash" or made large cash withdrawals before the fraudulent checks were returned to WFB as unpayable.

### C. Uncharged Conduct.

The Defendant engaged other fraudulent transactions in addition to the instances of fraud set forth in the eighteen counts in the Indictment. By totaling all of the fraudulent checks the Defendant deposited in various WFB accounts, the intended loss amount is $294,779.78. *See* PSR, ¶ 19; *United States v. Joetzki*, 952 F.2d 1090, 1093 (9th Cir. 1991) (including in intended loss amount a $5 million fraudulent check the defendant passed, even if the bank was extremely unlikely to honor the check). WFB's actual, out-of-pocket loss amount for charged and uncharged conduct is $155,013.15.

## ARGUMENT

It is now well established that in determining the appropriate sentence, this Court must conduct a two-step inquiry: (1) It must first correctly calculate the applicable Guidelines range as the "starting point"; and (2) it must next assess the factors set forth in 18 U.S.C. § 3553(a) to fashion an individualized sentence that is sufficient, but not greater than necessary, to achieve the aims of the statute. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). In this case, the 2000 Guidelines apply. PSR, ¶ 16; U.S.S.G. § 1B1.11(b)(3) (Nov. 2008).[1]

---

[1] Section 1B1.11(b)(3) provides that if there are two counts of conviction – one occurring before a change in the Guidelines, and one after – the later Guidelines provisions will apply to *all* counts. In this case, the embezzlement charges (Counts 1 through 10) occurred in 1998, while

CR 06-00538 SI
U.S.' SENTENCING MEMO                    -2-

I.      **GUIDELINES RANGE.**

As set forth above, the Probation Officer has correctly calculated the Guidelines range as 27-33 months, which is comprised of the base offense level of 6 (§ 2F1.1(a)), plus the following enhancements:

       (a) an 8-level increase based on a loss amount over $200,000 (§ 2F1.1(b)(1)(I));

       (b) a 2-level increase because the offense involved more than minimal planning, as well as more than one victim (§§ 2F1.1(b)(2)(A), (B));

       (c) a 2-level increase for use of false identification to produce or obtain other false identification (§ 2F1.1(b)(5)(C)(I); and

       (d) a 2-level increase for obstruction of justice (§ 3C1.1).

It is anticipated that the Defendant may contest imposition of the enhancements for use of false identification and obstruction of justice.[2]

The 2-level enhancement for use of false identification under § 2F1.1(b)(5)(C)(i) applies because the Defendant used one means of identification (the Social Security Numbers ("SSNs") of Dominick DePhilippis, David Brandon Luke, and Randall Stuart Gee) to obtain other means of identification (*e.g.*, a driver's license in the name of Dominick DePhilippis, as well as various WFB accounts in his names or aliases, using those real individuals' SSNs. *See* U.S.S.G. § 2F1.1, comment. (n.15) (2000 version) (defining "means of identification" in conjunction with 18 U.S.C. § 1028(d)(3), with the requirement that the identification be of an actual person); 18 U.S.C. § 1028(d)(3) (2000 version) (defining "means of identification" to include SSNs, driver's licenses, and "access device[s]" as defined under 18 U.S.C. § 1029(e)); 18 U.S.C. § 1029(e)

---

the bank fraud charges (Counts 11 through 18) occurred between February 2000 and May 2001. Because the applicable Guideline for these charges was revised between 1998 and 2001, the Guidelines in effect as of May 2001 – *i.e.*, the 2000 version of the Guidelines – will apply to all counts.

[2] The PSR also indicates that the Defendant may challenge the loss amount. However, the basis for such a challenge is unknown. Accordingly, the government cannot here respond, other to represent that the intended loss amount reflects the total of all <u>documented</u> fraudulent checks attributable to the Defendant.

CR 06-00538 SI
U.S.' SENTENCING MEMO               -3-

(2000 version) (defining "access device" to include an "account number").

The 2-level enhancement for obstruction of justice under § 3C1.1 applies because of the Defendant's perjury. The 2000 version of the Guidelines provides a 2-level enhancement when a defendant "(A) willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related (i) to the defendant's offense of conviction and relevant conduct; or (ii) a closely related offense." *See* U.S.S.G. § 3C1.1. Application Note 4(b) specifically includes "committing . . . perjury" as an example of conduct to which this enhancement applies.

As explained in paragraph 13 of the PSR, the Defendant repeatedly perjured himself when he was deposed in connection with his civil lawsuit against Wells Fargo, which arose out of the conduct to which he ultimately pled guilty in Counts 11 and 12. According to FBI case agent Todd Miller, the FBI began its investigation of the Defendant's theft from Wells Fargo in June 2001; the Defendant's deposition occurred in November 2001. Accordingly, the temporal element under the 2000 version of § 3C1.1 is satisfied, because his perjury in the civil case occurred during the pendency of – and not before – the FBI's investigation. *Cf. United States v. DeGeorge*, 380 F.3d 1203, 1222-23 (9th Cir. 2004) (finding § 3C1.1 inapplicable under 2000 version of Guidelines where defendant's perjury in civil proceedings occurred before criminal investigation).[3]

Accordingly, the government agrees with the Probation Officer's calculation of the Guidelines range.

**II.    SECTION 3553 FACTORS.**

The 27-month sentence recommended by the government is a reasonable and appropriate sentence in light of the factors set forth under 18 U.S.C. § 3553(a).

---

[3] The § 3C1.1 enhancement applies here regardless of whether the Defendant's perjury *actually* obstructed the criminal investigation. *See United States v. Magana-Guerrero,* 80 F.3d 398, 401 (9th Cir. 1995) (construing the 1994 version of Guidelines, and including Application note 3(b) (which is Application note 4(b) under the 2000 version of the Guidelines) as one of the types of obstructive conduct that does not require actual obstruction of justice).

CR 06-00538 SI
U.S.' SENTENCING MEMO                -4-

A. <u>Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>.

As set forth in § 3553(a)(1), this Court should consider the nature and circumstances of the offense and the history and characteristics of the Defendant. With respect to the nature of the offenses, embezzlement and bank fraud are certainly not a crimes of violence, but they are nonetheless serious crimes, particularly where, as here, they involve both perjury and identity theft.

In this case, the Defendant's conduct is particularly egregious for several reasons. First, the Defendant created several different identities – using stolen SSNs from real people – in order to pull off his embezzlement and fraud schemes. This identity theft adds a layer of deception on top of that inherent in embezzlement and bank fraud; it also shows the Defendant's lack of concern for the impact his conduct would have on other, innocent people.

Second, this is not a case where an otherwise honest bank teller was caught taking cash from the bank drawer, or where a cash-strapped homeowner puffed his or her income on a loan application for a refinancing. Fraud was the Defendant's sole purpose in getting a job at WFB under an assumed identity, and fraud was the Defendant's sole purpose in opening his numerous checking accounts in various names.

Furthermore, WFB caught the Defendant while his first scheme was in its infancy in 1998. Apparently not content with victimizing WFB just once, the Defendant set out on a far more extensive fraud campaign with his check-kiting scheme in 2000 and 2001. He further compounded his victimization of WFB by then suing the bank when it refused to honor his "fraud claim" report in connection with the fraudulent transactions in Counts Eleven and Twelve; he thus forced WFB to undertake the time and expense of defending a completely bogus civil lawsuit.

Finally, in connection with that civil lawsuit, the Defendant told lie after lie while under oath, including about his SSN, and whether he had ever had a California driver's license. *See* PSR, ¶ 13.

With respect to the history and characteristics of the Defendant, the government

CR 06-00538 SI
U.S.' SENTENCING MEMO                -5-

acknowledges that the Defendant has apparently led a law-abiding life since 2001, and has engaged in community service. Such conduct is certainly admirable, but these more recent activities do not "cancel out" the Defendant's culpability for his crimes, nor do they eliminate the need for the sentence to promote respect for the law and provide just punishment. (See Section B, *infra*.)

The government also recognizes that the Defendant now has three young children. However, based on their ages (10, 8, and 3), the Defendant had at least one, and possibly two, children when he decided to embark on his bank fraud campaign in 2000 and 2001. It is certainly unfortunate that his family may suffer the consequences of his actions, but he should perhaps have considered his wife and children before deciding to steal approximately $150,000 from Wells Fargo.

For all of these reasons, the nature of the offense and the history and characteristics of the Defendant support imposition of a 27-month sentence.

B. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment</u>.

Pursuant to 18 U.S.C. § 3553(a)(2)(A), the Court must also consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

The Defendant used a fake identity to get a job with WFB in order to embezzle money from innocent account holders. Having been caught, he then opened numerous accounts with WFB in other fake names in order to engage in a long-running check-kiting scheme. When WFB failed to pay on a "fraud claim report" in connection with two of his fraudulent transactions, he filed a specious lawsuit, and committed extensive perjury in the process. In committing his crimes, the Defendant victimized not only WFB, but the individuals whose accounts were compromised and the individuals whose SSNs were stolen. These are serious and brazen crimes, which demand a significant sentence to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment – regardless of the passage of time since they were

CR 06-00538 SI
U.S.' SENTENCING MEMO                   -6-

committed.[4]

C. The Need To Afford Adequate Deterrence to and Protect the Public from Criminal Conduct.

Section 3553(a)(2)(B) and (C) require this Court to take into account the need to provide adequate deterrence to criminal conduct, and the need to protect the public from further crimes. While the government has no reason to believe that this particular Defendant is likely to commit further crimes of this nature, an appropriate sentence properly includes consideration of general, societal deterrence as well as specific deterrence. *See United States v. Juvenile No. 1 (LWQ)*, 38 F.3d 470 (9th Cir. 1994) (upholding a firearms restriction as serving a general deterrent purpose). The government submits that a significant custodial sentence here is necessary to deter other potential white collar criminals. The sentence here should refute notion that white collar criminals – particularly those who "only" steal from institutional banks, as opposed to individuals – often get no more than a slap on the wrist.

**CONCLUSION**

As the Probation Officer recognizes, the Defendant's scheme was "highly devious," as he took numerous "affirmative steps . . . to perpetrate his fraud," including the acquisition of multiple California driver's licenses in various names, and use of several different SSNs stolen from real people. For all of the foregoing reasons, the government recommends a sentence of 27 months.

DATED: April 17, 2009

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

/s/
_____
TRACIE L. BROWN
Assistant United States Attorney

---

[4] The government does recognize that it took several years for the charges to be filed. In absence of that delay, and the positive steps the Defendant appears to have taken since committing the charged crimes, the recommendation here would likely be the middle point or high end of the Guidelines range.

CR 06-00538 SI
U.S.' SENTENCING MEMO                -7-